May it please the Court, Your Honor. My name is Anna Benvenu and I represent Petitioner Charan Jit-Singh. The first issue before the Court today is whether the Board's adverse credibility finding is supported by substantial evidence. Thereafter, this Court must consider whether the finding that Mr. Singh no longer has a well-founded fear of future persecution is supported by substantial evidence. And then finally, this Court should consider whether the Board erred in denying Mr. Singh's protection under the Convention Against Torture. With regard to the standard of review in this case, the Board should have reviewed the IJ's factual decisions under a clear error standard. Any credibility issues that were purely findings of fact should have been reviewed for clear error. Any legal determination should have been reviewed de novo as well as mixed questions of law and fact. Then this Court would review whether those standards under the clear error were for substantial evidence and the legal findings de novo. Unfortunately, in this case, the Board's decision is completely silent as to what standard of review it applied at all. There's nowhere in the Board's decision where it indicates whether it was applying a clear error or de novo standard or whether it changed between the two as appropriate depending on the type of issues. Why does that make a difference? Well, Your Honor, if the Board applied, it seems to me in places that the Board is applying a de novo standard where it should be applying a clear error standard. But that doesn't help you. It does not. However, in this case, because this Court is deprived of meaningful review where there's no standard of review, where it's not clear what the Board was doing, this Court should remand for the Board to clarify what standard of review it was applying. Now, the Board often doesn't say what standard it's applying. Occasionally, it will say we make our independent judgment. But here, the Board made the findings that your client lacked credibility. So how do you take issue with the Board's findings, even assuming it's de novo review under any standard of review? What's your argument? Well, assuming for a second that the Board did apply proper standards of review where it should have, this Court would then have to review the Board's decision. Were those supported by substantial evidence? In this case, that's very difficult to do because the Board's decision does not identify any specific or cogent reasons for its finding. Rather, the Board's decision simply lays out kind of general categories of credibility findings and says that it agrees with the IJ. So I think that would naturally lead this Court to go, then, to the IJ's decision to look to see if the IJ's decision and the reasoning there supports the Board's reasoning. Unfortunately, when you go to the IJ's decision and try to compare the two, they just don't line up. The Board lists six categories of reasons that it finds Mr. Singh not credible. Those are matched up, presumably, to five reasons that the IJ's decision does not align with. And so when you look to the statements the Board made, it's almost impossible to tell what exactly they relied on in the IJ's decision and what they didn't rely on. For example, the Board – the IJ laid out – the Board laid out the six reasons the Board laid out are the record – Administrative Record 9, activities supporting the AISSF prior to and after his arrest. That category doesn't appear in the IJ's decision. And the Board doesn't lay out which activities it finds problematic before or after the arrest. So this Court has a difficult time finding whether or not the Board's decision is supported by substantial evidence, because it's unclear what exactly it relied on, especially since the Board chose not to lay out categories that match the categories that the IJ laid out and numerically numbered. The I – May I return to your statement about the standard review? I'm looking at the Board decision on Excerpt to Record 10, which is page 3 of the Board decision. Yes, Your Honor. And the BIA says the Board finds that the Respondent's arguments on appeal do not persuade us that the immigration judge's adverse credibility determination was clearly erroneous. Doesn't that tell us that they applied the clearly erroneous standard? I'm sorry, Your Honor. Can you tell me where you are again? I'm on page 3 of the Board decision, page 10. I got 10 of the record. Second paragraph. Yes, I agree. So, I mean, they did apply the clearly erroneous standard. Right. But the problem is that clearly erroneous standard only applies to pure questions of fact on credibility. And there are certain issues on appeal in this case where there are mixed questions or perhaps just questions of law, such as whether an inconsistency actually exists would just be a factual question, but whether an inconsistency goes to the heart of the claim is a legal question. And the Board, as it's a pre-real ID case, is obligated to determine whether each inconsistency that it finds supported by substantial evidence goes to the heart of the claim. That legal question would be evaluated under de novo standard. It's not clear if they did that. There's not really any reference to whether the consistencies go to the heart of the inconsistencies or alleged inconsistencies go to the heart of the claim. There's one sentence that indicates that something may not be material, but there's not a breakdown by the Board of what exactly they were relying on, where they find those consistencies not supported by substantial evidence or are clearly erroneous, and then where they should do a de novo review, it's not obvious that that's what they've done. So it's difficult for this Court. It presents a challenge for this Court, and it presented a challenge for me in reviewing the record, what exactly did the Board do wrong. When you go to the I.J.'s decision, similarly, they just don't match. So it's very difficult to figure out what the I.J. is doing. In her decision, she lists a ten-page – she has kind of a ten-page summary of the moment where her case – her findings should get specific and cogent, right, when she should give exactly specific and cogent examples. She just becomes vague and doesn't list any specific or cogent examples of why she finds Respondent's testimony unpersuasive. She does, in fact, list one. And she says that the Respondent's testimony is incredible, specifically. I'm – at the record, at A.R. 79, it's the second reason that the I.J. lays out for finding the Respondent not credible. Respondent's membership and knowledge of the A.I.S.S.F. That's not found in the Board's decision expressly. There's kind of a paraphrase of it in two different – two of their different list categories. She says generally he had problems discussing his activities with the A.I.S.S.F. She doesn't identify what problems. She said generally he had problems with his knowledge of the organization – testifying about his knowledge of the organization in detail. She doesn't say what knowledge she found problematic. But she does give one specific example in her decision. She says the most egregious example is his insistence that his father continues to the present time to read about the Manjeet Singh faction of the A.I.S.S.F. in the newspaper when the exhibit at R-10 makes that, quote, completely impossible. This is a great example of a huge problem with the I.J. and the Board's decision in this case. The I.J. herself submitted exhibit R-10. She completely misstates what the exhibit at R-10 says. The exhibit at R-10 states – she says that it states that Manjeet Singh dissolved the faction of the A.I.S.S.F. and he joined the bottle party, according to her reading of the article. The article does not say that. It says that the Manjeet Singh faction was dissolved and that the Board members of the Manjeet faction would meet the following week to talk about the future course of action for it. And then it says he supports somebody named Bottle, but not that he supports the Bottle Party. So she's – Counsel, let me ask you. It seems like she did make – the I.J. did make a pretty clear determination that your client was not credible based on the vague testimony he gave regarding the posters, which related to his political activity. What's your response to that? I mean, isn't that sufficient in and of itself? I mean, he could not answer any questions. And the questions that he could, he was inconsistent. My response to that is when I look at the I.J.'s decision about it, that's – I   And when I look at the I.J.'s decision about accessibility findings, she mentions the word vagueness. She doesn't identify exactly what's vague. She says she has concerns about his demeanor and vagueness previously. And then there's 10 pages of test of her summary prior to that, where she lists all kinds of different concerns. And I'm not entirely clear what her vagueness finding is expressly or what you're talking about expressly. What I'm talking about? Well – Because she says the petitioner could only give vague descriptions of the posters he allegedly prepared and posted for the AISSF. And he described – when he was asked the question, the petitioner said posters contained the views of AISSF leaders, including – and he says, just to mention them, in what manner excesses were done to us in 1984. And I'm just trying to figure out – the I.J. thought that was non-responsive and vague and refers to that. And so I'm trying to figure out, where in the record does the petitioner describe how AISSF leaders viewed these excesses from 1984 and – or what the leader's specific opinions were about the excesses from 1984? And why isn't that sufficient? Well, it's – as – from the petitioner's perspective, the requirement that he – that the posters should have something that she expected to have on them, like that they should have views, leaders, a particular member of the party's views and opinions on the poster. And when he didn't say that they had that, she found that to be problematic or vague. That, to me, is impermissive speculation in this case. No, what she said was that he couldn't describe their content. She didn't say it should have had certain content on it. What she said was that he couldn't describe the content of the posters at all. Well, he did describe the content, though. He said that they contained explanations of what happened to Sikhs in 1984 and – in support of Khalistan. So he described – I mean, I don't know how specific she wanted him to be. It seems to me that a proper vagueness finding would need for her to follow up and say, you know, can you describe what they look like? Do they have pictures on them? Like, ask questions that would encourage him to testify more specifically, if that's what she wants to make a finding based on. Furthermore, it's not really clear that the Board relied on that finding in its decision. The Board doesn't mention vagueness or that example specifically. It says as a general rule that they reviewed the record and that they agree. But I'm not sure if they agree with every finding that I.J. made. And I'm not sure that I.J. made that finding expressly. What you're referring to, one of her issues of vagueness, doesn't appear when she actually summarizes her specific issue. When she actually says, I have a problem with his vagueness, she doesn't say what that problem is. So we're made to look back to the ten previous pages in the record to determine where she might have a problem with vagueness. She's required to say a specific and cogent reason for the vagueness problem when she's talking about the credibility, not just in a summary. Because her summary of credibility problems has all kinds of information in it that she doesn't later seem to rely on. For example, she talks ad nauseum about the birth certificate and her problem with the birth certificate. But the birth certificate never shows up again in her credibility finding. Go ahead. It does on number 14 on page 5. That's where she discusses her problems with the birth certificate. But then in her credibility finding, I don't see any reference to the birth certificate. It says summary of the court's prior decision. Number 14, the Respondent did not produce the birth certificate, although he claimed birth after such record registration as became mandatory. That's correct, Your Honor. And then on page 8, again, she talks about what happened when he did produce the birth certificate. But then once you go to page 11 of her decision, she doesn't mention whether or not she relied on those problems she had with his birth certificate. So I'm not clear if that's something she cared about or not. And again, did the Board look at that? So it's just not clear what she relied on specifically. She had problems that she did rely on, problems that she didn't rely on, and then what the Board did with that. So from Petitioner's perspective, this Court can't make a meaningful review because it's just not clear what anybody did below. It's not clear what the Board did, and it's not clear what the I.J. did. Well, actually, I have to say this is one of the more detailed I.J. opinions I've seen. She lists 14 credibility issues from her prior decision. She lists six from the second one. And then the BIA's is a more lengthy decision than we're used to seeing, and it says it identifies the general category. So I don't know how much more specific you'd want the I.J. to be. Well, what I really want is for the I.J. and what I think the law requires more than what I want is that the I.J. not just summarize her old decision and then just say I previously had problems and not tell me exactly what she's relying on, but I think that the law requires that she identify the specific and cogent reasons in her credibility finding, not just that she summarize general testimony and then later just say he's not credible, see my earlier ramblings. Because that is, in fact, how this reads. Her summary of the issue is rife with speculation and presumption. She uses the word presumes all the time throughout her decision, indicating her bias. She submitted evidence to the court and misstated what it said in her own evidence. I think that this decision is exemplary of somebody who's an I.J. who's biased and making presumptions and not relying on proper findings. And then when she doesn't identify what she relies on, it's impossible to know if I'm even right in saying that. So I think this Court can't meaningfully review this decision. And about 45 seconds left. You want to reserve? Yeah, I will reserve. Thank you, Your Honor. May it please the Court. Roseanne Perry on behalf of the Attorney General. Maybe you can start with the standard argument that was made by Ms. Benevue. The board clearly stated the standard of review in their decision. They clearly stated, as the judge stated, that the standard of review was clear error. That's our position. Is that sufficient? Yes, it is sufficient. The board clearly stated. They stated that they agreed with the immigration judge and all the reasons that the immigration judge provided. The board stated that we find that the immigration judge considered the whole record, cited substantial and probative evidence to support his finding and provided specific and cogent reasons for finding the respondent not credible. Can you respond to some of the arguments Ms. Benevue made here in terms of the IJ decision not being clear and corresponding to the appropriate findings or determinations that she needed to make? The IJ's decision was, I believe, 14 pages long, providing maybe that it wasn't under the respondent's credibility section, but providing reasonings for the IJ's decision that he wasn't credible, but breaking it down over the course of three hearings. So the government's position is that the IJ's decision was specific and cogent. Was it substantially, I mean, was there any, I guess I wanted to hear your response to Ms. Benevue in terms of whether these inconsistencies that were identified by the IJ that supported the adverse credibility, was there enough there? Yes, there were over, as the judge said, inconsistencies between the first two hearings and the last hearing. To point out the more important ones, Mr. Singh alleged or stated that he had been beaten only once during his first detention. However, he then stated that he was beaten on his first and second day. That goes to his claim of persecution. That is incredibly irrelevant, and you only need one inconsistency to find him not credible. Well, that's true, but this is, we're still dealing with a period of time in which it has to go to the heart of the claim. What inconsistencies do you think went to the heart of the claim? The fact that he said that he was beaten only once, and then stated that he was beaten twice. That absolutely goes to the heart of his claim of asylum, because he's saying that he was beaten on account of his participation in AISSF. So that definitely goes to the heart of his claim. Why is that a major inconsistency of the number of beatings in a particular detention? If he's beaten once, it's sufficient if it's on account of protected ground, right? But if he's lying about how many times he was beaten, that's important. I look at this record, and there are a lot of inconsistencies, I'll grant you that. I'm not sure that there are what I would usually term major inconsistencies. You say, well, this is really a problem for this petitioner. So you're faced with a record where you have a lot of small things, in my estimation, and maybe that's enough, but I'm not sure I saw anything that I thought was the, well, this is the slam dunk. This is the one that we don't even need to consider all the ones. I think in this case, maybe you disagree, you have to look at the cumulative factors because I'm not sure any one of them stands on their own. I believe that the government's position is also that you have to look at the cumulative factors as well. In addition to, well, the government believes that at least one of these goes to the heart of the claim, especially the detention where he says that he was beaten. Besides that, what else do you think goes to the heart of the claim? Well, he testified that after he was released from custody, he promised not to engage in AISF activities, that he continued to post posters and collect money, but then he later stated that he didn't post posters or collect money. And this goes to the heart of his claim because that's the reason why he was supposedly beaten and detained. That's another example. Anything else? Before you leave the posters, do you think he testified in a sufficiently specific manner regarding the posters? That's kind of the claim that I'm focused on is whether or not it was vague or whether he answered enough regarding the posters. The government's position would be that the IJ was correct in finding that he was vague and it goes to the heart of his claim as well. And so why do you think it was unsatisfactory? Well, because he couldn't provide the immigration judge with what actually was on the posters. If he's posting the posters, he should know what's on the posters. And how much detail is enough? Ms. Benevue said she'd been asked some other questions regarding the posters. I agree. That probably does go to the heart of his claim. And I'm just trying to figure out how much detail would he have needed to provide regarding the posters. At least some indication of what's on the poster. I mean, he didn't have to provide the immigration judge with exactly what she wanted to know what was on the posters or thought what should be on the posters, but at least he should know what he was posting. He also testified that he was, after leaving a doctor's care on February 22nd, 1994, that he went to stay with a friend, Bulgett. But in his new declaration, he claimed that he stayed with a friend named Colgett. And then he claimed that he just made a mistake at the last hearing. Other inconsistencies. He testified that he, at the last hearing, that he was fine and could walk after two days after his last first detention. But he previously testified that it took over a week for him to recover. He was asked for an explanation, but he couldn't provide one. So those are just some of the inconsistencies, and you only need one to find that he was not credible. And even if he were credible, the country conditions reports rebut any presumption of a well-founded fear of future persecution. He – the India country report indicated that Sikhs are no longer considered a persecuted group, and rank-and-file members of groups that were at one time targeted, for example, the AISSF, were in general terms safe. So therefore, even if he were credible, he doesn't have a well-founded fear of future persecution. Any further questions? No. Thank you. Thank you. Thank you. Respondents' counsel repeats that this court only needs to find one inconsistency. It's simply not the case. The findings of this court have to be much more specific than that. We need to look to see if substantial evidence supports the fact that the board's decision was – and its evaluation of the IJ's record for clear error is correct. And the only way to do that is to know what the board and the IJ said. And in this case, despite many pages of summary and many pages of explanation, when it came time for the IJ to actually say what her specific cogent findings were, she failed to do that. And as a result, this court doesn't know what she relied on, doesn't know what to review here. And therefore, this court must remand. May I ask you a question before you sit down on a different issue that's raised? Yes. How do you – let's assume that everything you say is true. How do you deal with the alternative finding of the board that the presumption of well-founded fear is rebutted by changed country conditions? I argue that the presumption was not rebutted, that the IJ misapplied the standard. First of all, she failed to consider the corroborating evidence and the things that happened in 2005. She failed to give those any weight. So once you give those weight and understand that things happened with the petitioner's family in 2005 and you consider that 10-year period, the fact that the insurgency ended in the early 90s isn't dispositive. You need to look to see first if there was a fundamental change and then an individualized analysis of whether that change still leaves the responder or petitioner with a well-founded fear. And in this case, that analysis wasn't conducted properly because she failed to consider the corroborating evidence of harm in 2005. Okay. Any further questions? Thank you for your argument. Thank you both for your arguments. Thank you. The case, as heard, will be submitted for decision.
judges: Albritton, Thomas, Murguia